## Morton *et al. v.* Walker.

Uncurrent bank notes will not discharge an execution when the sheriff and the defendant have notice that their reception is objected to by the plaintiff in the judgment.

When the sheriff is commanded to make money, he does not comply with his precept by taking depreciated bank notes.

Where the sheriff levied on slaves, and afterwards permitted the defendant to take them out of the county and sell them for depreciated bank notes, which were paid over to the sheriff, it was held to be a release of the levy, and therefore no satisfaction of the execution.

It seems that the defendant in an execution is not entitled to a jury to ascertain the facts which are alleged to amount to the satisfaction of an execution.

IN ERROR from the circuit court of the county of Yazoo.

On the 18th day of January, 1840, a *fi. fa.* issued on a forfeited forthcoming bond, for the sum of ten thousand two hundred and sixty-six dollars and thirty-five cents, against Hubbard S. Wilkinson, Philip Burrus, James R. Burrus, William M. Yandell and James Morton, returnable to the following May term of the court.

Upon said execution the sheriff indorsed the following returns:

"Received, January 24th, 1840. Levied this execution, March the 23, 1840, on the following negroes, to wit. (Here followed the names of twenty slaves.)

Signed,                    P. Buford, Sheriff,

By Jas. Biles, D. S."

On said execution was the further return:

"Received of James Morton, six hundred and fifty-five dollars in Louisiana and Commercial Bank of Manchester money. Also, ten thousand six hundred and eighty dollars and fifty-seven cents in Union money, in satisfaction of this case, May 7, 1840.

Signed,                    P. Buford, Sheriff,

By Jas. Biles, D. S."

Morton *et al. v.* Walker.

The plaintiff in the execution moved to set aside the last return, or so much thereof as related to the Union money, on the ground that the Union money was not a good satisfaction, and that the same had been paid contrary to the instructions to the sheriff; of which instructions it was alleged Morton, who paid the same, had notice.

Before any proof was admitted on the hearing of the motion, the defendant in the execution demanded a jury, which was refused by the judge, and his opinion excepted to.

The plaintiffs proved by Harrison, a witness, that on the 29th of March, 1840, he, by his attorneys, gave to the sheriff, by his counsel, the following instructions, as to the kind of money to be received in payment of executions then in the hands of the sheriff:

"Parham Buford, Esq. Sheriff of Yazoo.

We are directed to instruct you, that hereafter you must take no more notes of the Union Bank of the state of Mississippi, in the payment or satisfaction of any execution wherein the Commercial Bank of Manchester, or M. B. Hamer & Co. or Jeremiah Walker are plaintiffs, and in which we are marked as the attorneys.

BATTAIL & HAMER, Attorneys for plaintiffs.

P. S. Planters', Agricultural and Commercial Bank of Manchester we will take. B. & H."

March 29th, 1840."

Same witness stated that he informed the sheriff "that it must be collected as the instructions read by him;" that he told Morton that the sheriff was instructed not to take Union money, but did not know whether the information was given to Morton by him before or after Morton had sold his negroes to get the money to pay this debt. The same witness proved that Union money was at a discount; that it was the understanding between the sheriff and Morton that the negroes should be sold for Agricultural money; but that some two months before court Buford told Morton that he would receive Union money; that a few days before the sheriff received the Union money, Morton deposited nine thousand dollars in the sheriff's office for safe keeping, the sheriff refusing to receive the same.

The deputy sheriff stated that he levied the execution on the negroes sufficient to satisfy the judgment; that the property was

advertised and brought to the court house by Morton on the first Monday of April, the day of sale, and delivered into the possession of the sheriff; that it was not sold for want of time, and again returned to the possession of Morton; that the Union money was received by him in pursuance of the instructions·of the sheriff, Buford; that he apprised Morton of the instructions not to receive the money, one or two days before it was received; that on the 6th of April, 1840, most of the sales were for Union money.

The attorney for the plaintiff stated, that some three or four weeks before the return day of the execution, he informed Morton of the instructions not to receive Union money; and stated further that there had been a postponement of the sale by the sheriff two or three times. On the same day, which was the 6th of April, 1840, Morton declared to witness that the property would have to be sold by the sheriff, and he desired the sale to take place, and the witness urged the sheriff to sell, and not to take Union money. The sheriff promised to sell, and not to take Union money; but on the evening of the same day informed the witness that Morton wished him to take Union money, and that his sureties said he ought to do so.

The defendant in the execution proved by Cage, a witness, that on the first Monday of April, 1840, Morton brought the property to the place of sale, and repeatedly requested the sheriff to sell; that Morton made an arrangement to dispose of the negroes in Vicksburg, and took them there to deliver, and receive the money by the consent and directions of the sheriff; that the sheriff afterwards refused at first to take the money from Morton, on the ground that after Morton left to deliver the negroes in Vicksburg he had received notice not to take Union money; but upon consultation with his sureties the sheriff came to the conclusion that he ought to treat the sale as one made on the day Morton left with the negroes, and receive the Union money, as he had agreed to do, as so much money paid on the said sale day, which was April 7th, 1840.

It was also in proof, by other witnesses, that up to the said day in April, the sheriff was in the habit of receiving Union money in the discharge of executions, both on sale and otherwise.

The judgment was afterwards superceded, and a credit of six hundred and twenty-seven dollars allowed.

Howard for plaintiff in error.

1. Bank paper is regarded as currency, and is a good legal tender unless specially objected to. 1 Pet. Cond. Rep. 120 ; Ohio Cond. Rep. 85; 9 J. R. 120; 1 Burr. 452. If bank notes are paid in good faith to the officer, there can be no doubt that they will be a good satisfaction of the execution. 1 J. J. Marsh. 503; 6 H. & Jno. R. 47. It has been held that the officer, even on notice by the plaintiff in execution, is not bound to demand specie, but may in the exercise of a sound discretion, receive bank notes. 4 Cowen, 422; *ex parte* Board, 2 Cowen, 190.

2. It would be unreasonable to make the defendant responsible for the instructions to the sheriff, unless a knowledge of them could be brought home to him, in a case where he was free to act in relation to them. In this case it is by no means clear that Morton had notice of the instructions to the sheriff before his property was sold under the directions of the sheriff. Certain conversations are related by one of the attorneys who was a witness, which he thinks were had before the sale; but the circumstances go to show that it must have been afterwards. This is made clear by the testimony of Cage, who says that the sheriff at one time refused to receive the Union money, on the ground that after the sale, and while Morton was gone to deliver the negroes he had received notice not to take Union money.

3. It was in proof that the levy was made on sufficient personal property before the instructions were given to the sheriff. This was a satisfaction of the judgment and execution. 7 Cowen, 17; Jackson *v.* Bowen, 4 *Ib.* ; *ex parte* Lawrence, 417 ; 4 Mass. 403; 12 J. R. 207; 7 *Ib.* 428.

After the levy, the defendant had no longer any control over the property. He was the mere bailee of the sheriff. He had no discretion as to what kind of money the sheriff should sell the property for. He could act only as the agent of the sheriff and under his directions. He had neither in fact nor in contemplation of law any control over the sale or the execution of the process. It is sufficiently apparent that the sheriff considered the sale of

the negroes as an official sale. Morton is in a very different atti-
tude from that of a defendant paying paper money to an officer
without levy or sale. Suppose that the sheriff, contrary to the
instructions of the plaintiff in the execution, had cried the pro-
perty on the sale day for Union money, would it not have been a
satisfaction of the judgment? It could have made no difference
whether the defendant concurred in such a sale or not, for the
reason that he had no discretion or authority, and could not there-
fore be a party to the sheriff's acts. It does not appear that the
property was cried in Benton before it was sent to Vicksburg for
delivery, yet it does sufficiently appear that the property was sold
in Benton in pursuance of a levy and advertisement by the sheriff,
and that the sale was by his consent and directions, in satisfaction
of this judgment.

4. Money is the subject of a levy, and may be taken on execu-
tion. 1 Cranch, 117; 1 Cond. Rep. 261; 12 J. R. 220. If these
bank notes were not properly received as a payment, inasmuch as
the money was received by virtue of the execution, it is in con-
templation of law a levy. It changed the right of property, and
was therefore such a levy as satisfied the execution to the amount
of the specie value of the bank notes. They may be said to be
perishable articles, and should therefore have been sold by the
sheriff. The rule is well established, that a levy on perishable
articles will satisfy a judgment, although the officer permit them
to perish, or waste them.

If, then, the sheriff levied on the Union money, which was
worth eighty cents on the dollar, and instead of selling it, per-
mitted it to depreciate until it became worthless, still it must be
held a satisfaction of the judgment.

The defendant in the motion demanded a jury trial, which
should have been granted. It was a case in which there was a
complicated state of facts, which was proper only for the determi-
nation of a jury. The question of notice to Morton not to pay
Union money was one concerning which there was conflicting
testimony, which was proper for the consideration of a jury, and
upon which the case will, in all probability be adjudicated. Mor-
ton surely had a right to demand that this should be weighed by
a jury of his country. 3 Story's Const. 645.

G. S. YERGER for defendant.

1. By our constitution the "right of trial by jury shall remain inviolate." This preserves the right only in such cases when the right was given or allowed by the common law. In cases where the right did not exist at common law, or when it was a discretionary power of the judge to award it or not upon feigned issues, motions, &c., the constitutional provision does not apply. Lewis *v.* Garret, 5 Howard, 453. At common law, motion to quash executions and returns by the officers of the court, without the intervention of a jury, necessarily resulted from the fact that the court had power to control its own process and the acts of its officers, and to see that its process was executed and not abused; hence the court always had power to see if its executions were executed in conformity with the law, and if the sheriff abused the process, and made returns which was false or insufficient, or where he stepped beyond his power, the courts upon motion examined into the facts and corrected the abuse.

Many of the authorities cited below, (and vide, 2 J. J. Marshall, 71,) to show that the sheriff has no authority to receive any thing but money on an execution, were motions made to quash his return of satisfaction, &c., and which were invariably decided by the court, without the intervention of a jury. The court may, if it thinks proper, in cases of disputed facts, award a jury, but this is a power which may or may not be exercised in its discretion.

2. If there had been no instructions to the sheriff, not to take Union money, the law did not authorize him to do it. His authority was to collect the money, to receive money, or to levy on property and sell it for money. If he does not levy and sell for money, he can only receive from the defendant money, or at least bank notes, which represent money and are equivalent to it, as forming and constituting the currency of the county; but depreciated paper, or a return on an execution showing that bank notes of any description were received, without also showing they were equivalent to money would not do, and will be quashed. It has been repeatedly held, that neither an attorney at law, or a sheriff by virtue of their authority as attorney and sheriff, have no right to receive bank notes, particularly where they are depreciated. Their authority is merely to collect the money, and if they receive

any thing else, it is an excess of authority, not binding on the party. Vide as to sheriff's authority, 9 John. Rep. 262; 6 Cowen, 465; 1 Cowen, 499; 4 Cowen, 553; Lytle *v.* Etherby, 10 Yerger; Tutt *v.* Fulgham, 5 Howard, 621; 2 Stewart & Porter, 109; 3 Ib. 385.

As to attorney's authority, that he can receive nothing but money. Gullet *v.* Lewis, 3 Stewart, 23; Wickliffe *v.* Davis, 2 J. J. Marshall, 71. The point has been so ruled by this court, expressly in Tutt *v.* Fulgham, 5 Howard, 621. In this case the sheriff's return showed he had received in Union Bank bills. So it does in our case. The return in the case at bar is, that he received it in "Union money," the meaning of which is, "notes of the Union Bank," which in fact as the evidence shows, was received. It is true the counsel who argued the case of Tutt *v.* Fulgham, admitted if the sheriff returned the execution, "satisfied generally" and received Union notes, that it would be a satisfaction of the judgment, and the sheriff could alone be proceeded against. In this, however, he was clearly mistaken, as many of the above authorities prove. It is not the sheriff's return that satisfies the execution, it is his receipt of the money. The return satisfied is *prima facie* evidence of the fact, and as long as it is on the execution, perhaps another could not issue. But if the return is false, if he received horses, cows or property in satisfaction, he would exceed his authority, and his false return of satisfaction, when proved, will be set aside.

It would indeed be strange if the law said to him, you shall receive nothing but money on the execution, if you do, the plaintiff is not bound, because he did not authorize you, and it was a gross violation of duty in you to receive any thing but money, but nevertheless, although you have thus violated your duty in receiving property instead of money, go on, commit another breach of duty, make a false return that you received the money, and this additional breach of duty renders your first illegal act valid, or, in other words, the sheriff has violated his duty once, and if he will only violate it once more, by returning a falsehood, both violations of duty are cured.

It is true, that, when he has returned the "writ satisfied," the plaintiff may proceed against him. So he may, if he returns he

Morton *et al. v.* Walker.

has received it in horses or dogs; for it is an insufficient return. It is well settled that, notwithstanding there is a remedy against the sheriff for breach of duty, yet if, in fact, he has exceeded his authority, the payment is not satisfied, and the plaintiff may elect to have another execution, or proceed against the sheriff, as in cases of escape, &c.   Taylor *v.* Thompson, 5 Pet. 358, 369, 370; 6 Cowen, 265.

3. But it is said the sheriff levied on property sufficient to satisfy the execution, and that this levy is a satisfaction.   It is true, as a general rule, a levy on personal property is *prima facie* a satisfaction; and when the books speak of a levy sufficient to satisfy the judgment being a satisfaction of the judgment, they do not mean that the mere levy is *ipso facto*, and of itself, conclusive evidence of satisfaction.   The levy, until disposed of, prevents the plaintiff from proceeding on his execution, and, so long as the goods are in the hands of the sheriff, it is so far a satisfaction, that there can be no other proceeding.   If the sheriff wastes the goods, or destroys them, or sells them, the levy then is a satisfaction. But that the mere fact of a levy, unaccompanied by sale or wasting of the property, is of itself a satisfaction, is not the law.   The general property, notwithstanding the levy, is still in the defendant; the sheriff only has a special property.   If the goods are destroyed by lightning, or other inevitable accident, the judgment is not satisfied, because the goods were still the debtor's; the sheriff only had a special property for the purpose of selling to satisfy, which he was prevented from doing by the accidental destruction of the goods.   So if the goods are restored to the defendant, upon a supersedeas or injunction obtained by him; when these are discharged the sheriff may proceed to sell, and re-levy on other goods if they are not produced   So if they are re-delivered on a forthcoming bond, which is quashed; another execution can issue on the original judgment, because the levy did not satisfy the judgment, as they were restored to him.   If he had forfeited the bond, then, by statute, the levy and forfeiture, if the bond is good, is a satisfaction.   The meaning, therefore, of the decisions that a levy on personal property is a satisfaction, is simply that, *prima facie* and unexplained, it is so.   The following authorities show clearly

that such is the law.    19 Wend. 80;  Morrow *v.* Hart, 1 Marsh. 292;  Duncan *v.* Harris, 17 Serg. & Rawle, 436;  8 Cow. 194.

That a mere levy, without sale does not, *ipso facto,* operate as a satisfaction, is clear, from the fact that, if there are two judgments for the same debt, a levy without sale on one does not prevent an execution on the other.   3 How., McNutt *v.* Wilcox and Fearn, and authorities there cited.

In this case, after the levy, the negroes were re-delivered by the sheriff to the defendant, at his request, to sell at private sale to pay the judgment.   That we have a remedy against the sheriff for this breach of duty, is clear; but that we may elect to proceed under the judgment, which, by the act, is not satisfied, if we choose, is equally clear.   Taylor *v.* Thompson, 5 Pct. 358, 369, 370;  6 Cowen, 265.

WILKINSON & MILES on the same side.

Courts of the most respectable standing in the Union have repeatedly held that a sheriff's return of an execution satisfied in promissory notes or bank paper, without the consent of the parties, is null and void.   Wickliffe *v.* Davis, 2 J. J. Marsshall's Rep. 71;   1 Cow. Rep. 46, 499; 9 John's Rep. 263; 4 Cow. Rep. 553; 2 Dunlap's Prac. 832;  6 Cow. Rep. 465; 10 Yerger's Rep. 393; 13 Mass. Rep. 319; 4 How. Rep. 404; 7 Leigh's Rep. 277; 5 How. Rep. 246; Ibid, 621.

No consent was given by Walker that bank notes should be received.   On the contrary, Judge Battaile, one of Walker's attornies, repeatedly, in the most pointed and emphatic manner, protested against their reception by the sheriff.

It may perhaps be insisted that the sheriff is the plaintiff's agent, and upon that ground he concluded that his reception of the bank notes is in law the reception of the plaintiff.   But we respectfully urge that the sheriff is not the plaintiff's agent; he is the mere minister of the law.   2 Dev. Rep. 137; 11 Serg. & R. Rep. 134.   And is not clothed, by virtue of his office, with the power of acting as plaintiff's agent.

Conceding, however, for the argument, that the sheriff stands in the attitude of plaintiff's agent, the conclusion sought to be arrived at is a clear *non sequitur.*

If an agent at all, he is but a special agent. The execution in his hands is his letter of attorney. If he acts beyond the scope of his powers, upon familiar principles his acts are void.

What, then, is he required to do? Simply to collect so many dollars and cents. Is any thing, save gold and silver, known to the law as dollars? Clearly not. Should he then receive any thing but gold and silver, the act would transcend his powers, and would consequently be void.

*Per Curiam.*

Walker, the defendant in error, had obtained judgment in the circuit court of Yazoo county, against the plaintiffs in error, for ten thousand two hundred and eighty-three dollars and sixty-five cents. He sued out an execution, which was delivered to the sheriff, who received in payment of principal and interest six hundred and fifty-five dollars in Louisiana and Commercial Bank of Manchester money, and ten thousand six hundred and eighty dollars and fifty-seven cents in Union Bank notes, in satisfaction of this case. The plaintiff in the execution at the next term after the execution was returned, moved the court to set aside the return, and for a new execution, which motion was sustained. To reverse this judgment the plaintiffs in error bring up the case.

The facts, so far as they are material, are these: The execution was received by the sheriff the 24th of January, 1840, and levied [on negroes belonging to Morton on the 23rd of March. The negroes were advertised for sale. Some time previous to the day of sale, the attorneys of the plaintiff in the execution gave the sheriff a written notice that Union money would not be received in payment of the execution. The sheriff was also several times told not to take Union Bank notes, as they would not be received by the plaintiff. Morton, it seems, was also apprized of the determination of the plaintiff. The negroes levied on were left in possession of Morton, who produced them on the day of sale, but they were not sold, and by an arrangement between Morton and the sheriff, the former was permitted to take them off and dispose of them at private sale, under an injunction that he should immediately pay over the money. Morton afterwards brought a considerable part of the money in the notes of the

Union Bank, and was again informed by the deputy sheriff that it could not be received. He however deposited it with the sheriff. The sheriff for some time refused to receive the money, stating to Morton that he was instructed not to receive that kind of money. He ultimately however agreed to receive it, and indorsed the receipt mentioned above on the execution. Union Bank notes were then at about forty per cent. discount. The testimony discloses other circumstances, but nothing which could alter the case.

On this statement of the facts, it must be manifest that the court did right in sustaining the motion. There is no rule of law by which Morton could be authorized to pay in depreciated money, or that would justify the sheriff in receiving it, when they both had notice that it would not be received by the plaintiff. The sheriff was required by the process to make so much money. He did not comply with the command by taking paper so depreciated as to be worth but little more than half the amount. The levy made by the sheriff will not, under the circumstances, protect Morton. The levy was waived, and Morton sold the negroes himself, or at least took them off. By this conduct the sheriff it is true became liable, but this does not discharge Morton. The plaintiff may pursue his remedy against either or both. If the negroes had been sold by the sheriff for Union money, or if the levy had not been raised, the question might be different; but this is a voluntary payment on the part of Morton. In this view we are fully sustained by the case of Tutt's Administrator *v.* Fulgham, 5 Howard, 621. The case of Codwin *v.* Field, 9 J. R. 263, and the case of the Bank of Orange County *v.* Wakeman, 1 Cowen, 46, are also in point.

The plaintiffs in error, it seems, demanded that a jury should be impannelled to try the facts, but the case was not such as to require the intervention of a jury.

The judgment must be affirmed.